# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| DEWAYNE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-01200-SHM-tmp |
| | ) | |
| JOHN DOE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**ORDER DENYING MOTION TO APPOINT COUNSEL; DISMISSING OFFICIAL CAPACITY CLAIMS IN PART WITH PREJUDICE AND IN PART WITHOUT PREJUDICE; DISMISSING DEFENDANT JOHN DOE; AND GRANTING LEAVE TO AMEND CONSOLIDATED COMPLAINT**

---

On September 20, 2023, Plaintiff Dewayne Jones, an inmate incarcerated at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1.) On October 12, 2023, Jones filed a motion for leave to proceed *in forma pauperis* ("IFP Motion," ECF No. 5) and a document entitled "Notice for Order" (ECF No. 4), which asks the Court to accept certain documents as exhibits to the IFP Motion. (*Id.* at PageID 17-18.) On October 16, 2023, the Court granted the IFP Motion and assessed the three hundred and fifty dollar ($350.00) civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq* (the "PLRA"). (ECF No. 6.)[1] On May 29, 2024, Jones filed a motion to appoint counsel. (ECF No. 9.)

---

[1] On November 8, 2023, Jones declared his nationality and self-identified as a Moorish American. (ECF No. 8.)

## I.   **BACKGROUND**

Jones alleges violations of his Eighth and Fourteenth Amendment rights for failure to protect him from other inmates.  (ECF No. 1 at PageID 3.)  He names Defendants: (1) "John Doe," Commissioner of Department of Correction; (2) NWCX Warden Brandon Watwood; (3) Walton, Assistant Warden of Security; (4) Parson, Assistant Warden of Treatment; (5) Baggett, Unit Manager; (5) Ward, Unit Sergeant; (6) P. Scott, "C.C.O."; and (7) Garr, I.A.  (*See id.* at PageID 1-3.)  All Defendants are named in their individual and official capacities.  (*Id.*)

Jones alleges that, on or about July 27, 2023, inmates known as Spider Los, Big D, M.D., and Detroit, who are CRIPS gang members, told Jones that they had been told about his "allegation"[2] and that Jones was "being extorted for such allegations."  (*Id.* at PageID 5.)  Jones was told that he would have to pay forty ($40) dollars every Tuesday, commissary day, in food or by cash app.  (*Id.* at PageID 6.)  "[I]f he refused to pay[,] . . . he will be beat up to the point of death."  (*Id.* at PageID 5.)

Jones worked as a "Rockman" in the clinic.  (*Id.* at PageID 6.)  On or about August 2, 2023, while in the clinic, Jones told Garr about the extortion and threat to his life.  (*Id.*)  Garr informed Jones that Garr would have Jones moved immediately.  (*Id.*)

On August 4, 2023, Jones saw Walton as Walton was leaving the clinic and told Walton of the threat and extortion.  (*Id.*)  Walton told Jones that Walton would remove Jones from the area and typed the information into Walton's phone.  (*Id.*)

---

[2] The "allegation" to which Jones refers appears to be his criminal convictions for rape of a child and aggravated sexual battery because he later alleges that the CRIPS knew about his convictions.  (*See* ECF No. 1 at PageID 8.)  *See* Tennessee Department of Correction, Felony Offender Information (last accessed July 11, 2024).

On or about August 10, 2023, Jones saw Parson making her rounds in the clinic and told Parson about the extortion and threat.  (*Id.*)  Jones told Parson that he wanted to "immediately leave for Lake County."  (*Id.* at PageID 7.)  Parson asked for more details and "was advised that an unknown C.O. (at that time) had divulge[d] the allegation that was reason for imprisonment." (*Id.*)  Jones alleges that Parson took Jones's statement and information and said she would have someone speak with Jones and try to get him moved.  (*Id.*)  On August 14, 2023, a two-way message was sent to Parson, at her request, after Jones had contacted her again about the urgency of moving.  (*Id.*)

On August 22, 2023, a "TWO WAY MESSAGE was wrote to Watwood advising him that the Plaintiff for five (5) weeks[,] I've been raising issues about a problem that has been brewing at hand that can potentially lead to bodily harm, injuries or DEATH to individual(s) or Plaintiff; putting him (Plaintiff) in a position to defend and protect his LIFE as he (Plaintiff) in this TWO WAY MESSAGE named others whom the problem was told to, or brought to their attention and about moving to LAKE COUNTY quickly."  (*Id.*)

Jones contends that "an email was sent [to the John Doe, Commissioner] after Watwood failed to move, protect, or act on the information provide[d]" making the Commissioner aware of the threats, extortion, and failure to act.  (*Id.* at PageID 7-8.)

Jones alleges that, on August 25, 2023, Big D told Jones that Ward had told the CRIPS about Jones's convictions and showed the CRIPS the proof in "black and white."  (*Id.* at PageID 8.)

Detroit attacked Jones on September 8, 2023, around 8:40 p.m., outside of Units 11 and 12.  (*Id.* at PageID 8.)  Detroit told Jones to "get the money to the area or go to the med."  (*Id.*) When Jones refused to pay, "a 'knife' was brandished."  (*Id.*)  Jones alleges that he was able to get

control of the knife and use it on Detroit.  (*Id.* at PageID 8-9.)  Jones contends that he has been receiving death threats since the incident and does not leave the cell or go to the kitchen to eat. (*Id.* at PageID 9.)

On September 9, 2023, Jones filed a grievance, and the response was that it was a classification matter.  (ECF No. 1 at PageID 9.)

On September 12, 2023, Jones sent two-way messages to Baggett and Scott about the situation and requesting to be moved urgently.  (*Id.*)

As of September 14, 2024, Jones had not been moved.  (*Id.*)  He alleges that "the administration here (Ward) told one of the assailant/ extortioner/ inmate M.D. what I wrote on the TWO WAY MESSAGE as he (M.D.) advised the Plaintiff that he advised the administration that I was not going anywhere."  (*Id.*)

Jones seeks: (1) a declaratory judgment that "the defendants have acted in violation of the United States Constitution"; (2) injunctive relief "compelling defendants to provide or stop doing something"; (3) monetary damages of "one dollar $1.00 as compensatory damages", and (4) "all other relief deem[ed] proper by this Court."  (*Id.* at PageID 9-10.)

In the Notice for Order, Jones asks to be moved immediately to the Lake County facility or to Unit 14 at NWCX, if there is no available room at Lake County, and that Jones not "be intimated, threaten[ed], assaulted or batt[er]ed, or retaliated or conspired against or his property taken, damaged or destroyed in any kind of form, fashion, or shape or style."  (ECF No. 4 at PageID 18-19.)  Jones asserts that he was attacked a second time on September 28, 2023.  (ECF No. 4 at PageID 18; *see* ECF No. 5-5 (two-way message to Watwood dated Sept. 28, 2023).)

Because Jones makes additional allegations and requests for relief in the Notice for Order, the Court **CONSOLIDATES** the pleadings at ECF Nos. 1 and 4 ("the Consolidated Complaint") for purposes of screening Jones's claims under 42 U.S.C. § 1983, pursuant to the PLRA. [3]

For the reasons explained below, the Motion to Appoint Counsel (ECF No. 9) is **DENIED**; the official capacity claims are **DISMISSED WITH AND WITHOUT PREJUDICE**; Defendant John Doe is **DISMISSED WITHOUT PREJUDICE**; and leave to amend is **GRANTED** as specified below.

## II.   MOTION FOR APPOINTMENT OF COUNSEL

Jones requests appointment of counsel so that the case "might gain the proper attention and receive adequate care." (ECF No. 9 at PageID 54.) He believes that, without an attorney, "certain paper/documents won't be filed and the case will not be heard for some[] small, technical error." (*Id.*) Jones asserts that he "does not speak the language or know[] the customs/process of the Court." (*Id.*)

"The court may request an attorney to represent any person unable to afford counsel," *see* 28 U.S.C. § 1915(e)(1), but "[t]here is no constitutional or ... statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993); *accord Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). The appointment of counsel in a civil proceeding is a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are slim. *Id.*

---

[3] The Clerk is **DIRECTED** to terminate the Notice for Order (ECF No. 4) because the Court has considered the exhibits in ruling on the IFP Motion and any remaining allegations are being addressed on screening of the Consolidated Complaint.

The decision to appoint counsel for an indigent litigant in a civil case is a matter vested within the broad discretion of the Court. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987); *see Lavado*, 992 F.2d at 60405. To determine whether there are exceptional circumstances, a court examines the pleadings and documents to assess the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *see also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key [to determining whether there are exceptional circumstances] is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help.").

After considering Plaintiff's motion for appointment of counsel, including the type and nature of the case, its complexity, and Plaintiff's ability to prosecute his claim, counsel is not necessary at this time to ensure Plaintiff's claims are fairly heard. *See Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). The issues in this case are not complex, and the complaint's assertions do not demonstrate exceptional circumstances warranting appointment of counsel at this time. *See Kennedy v. Doyle*, 37 F. App'x 755, 757 (6th Cir. 2002). That Plaintiff has no formal legal education is not an exceptional circumstance that warrants the appointment of counsel in a civil case. *See Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000) ("The district court had no duty to remedy [Plaintiff's] lack of legal training by appointing counsel, as no constitutional right to counsel exists in a civil case") (citing *Lavado*, 992 F.2d at 605–06). Plaintiff has filed a coherent complaint, participated in the grievance process, and filed supporting documentation. From these filings, it appears that Plaintiff can prosecute his claims from prison. Like all prisoners proceeding *pro se* before the Court, Plaintiff must familiarize himself with, and

follow, the Court's Local Rules and the Federal Rules of Civil Procedure.  The Court cannot act as counsel for Plaintiff.  *See Pliler v. Ford*, 542 U.S. 225, 231 (2004) (District Courts "have no obligation to act as counsel or paralegal" to *pro se* litigants).

Plaintiff's motion (ECF No. 9) does not demonstrate exceptional circumstances warranting appointment of counsel.  The motion is **DENIED**, subject to Plaintiff's right to re-file an application for counsel as the case proceeds.

## III.   <u>LEGAL STANDARDS</u>

### A.  <u>Screening Requirements</u>

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and determines whether the allegations "plausibly suggest an entitlement to relief."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Federal Rule of Civil Procedure 8 provides guidance on this issue.  Although Rule 8 only requires a complaint to contain "a short

and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to complaints drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating, "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

### B. Requirements To State A Claim Under 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). To succeed, Jones must satisfy both requirements.

## IV. ANALYSIS

The Consolidated Complaint alleges a claim of failure to protect against Defendants in their individual and official capacities based on Defendants' alleged knowledge of threats against Jones's life and their failure to act, with the result that Jones was twice attacked by other inmates.

A. **Official Capacity Claims**

Jones has sued the Defendants, who are employees of the State of Tennessee, in their official capacities.  The claims against Defendants in their official capacities are treated as claims against their employer, the State of Tennessee.  *See, e.g., Owens v. Weirich*, No. 2:21-cv-02041-MSN-tmp, 2021 WL 4234937, at *2 (W.D. Tenn. Sept. 26, 2021).  Jones has no valid claim against the State of Tennessee.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court.  *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State") (citations omitted).  Tennessee has not waived its sovereign immunity.  *See* Tenn. Code Ann. § 20-13-102(a).  A state is not a person within the meaning of 42 U.S.C. § 1983.  *Lapides v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Jones has no claims for money damages against the State of Tennessee or Defendants in their official capacities.

To the extent Jones seeks injunctive relief against Defendants in their official capacities, the Supreme Court has clarified that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective

relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)); *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ( "[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123)). To proceed with official capacity claims for prospective injunctive relief against State employees like Defendants, Jones must allege that the State of Tennessee was responsible for the violation of his constitutional rights because of a custom or policy. *Graham*, 473 U.S. at 166; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Sixth Circuit has held that to establish the requisite causal link between a constitutional violation and a policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694). Jones has not alleged he was injured due to an unconstitutional policy or custom of the State of Tennessee. Jones fails to state a claim for prospective injunctive or declaratory relief against Defendants in their official capacities.

Jones has failed to state a claim for relief against Defendants in their official capacities, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 28 U.S.C. §§ 1915A(b)(1). Any claims for damages against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**. Claims for injunctive and declaratory relief against Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

### B. <u>John Doe</u>

Jones seeks to sue a "John Doe", who is the Commissioner of the Department of Correction.  (ECF No. 1 at PageID 1-2.)  Service of process cannot be made on an unknown or fictitious party.  The filing of a complaint against a "John Doe" defendant does not toll the running of the statute of limitation against that party.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

Although Jones asserts that "John Doe" is the Commissioner of the Department of Correction, Jones must identify the unnamed individual and re-allege claims against that individual within the one-year limitations period set out in Tenn. Code Ann. § 28-3-104(a)(1)(B).  To establish liability under § 1983 against that unnamed individual, Jones must demonstrate that such defendant was "personally involved" in the unconstitutional incident.  *See*, *e.g.*, *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).  The claim against John Doe is **DISMISSED WITHOUT PREJUDICE**.

### C. <u>Failure to Protect</u>

Jones's allegations that the Defendants, in their individual capacities, failed to protect Jones amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners").  "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment."  *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38. In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

In the instant case, Jones has alleged that he was incarcerated under a substantial risk of serious harm based on threats of physical harm from CRIPS gang members and that each defendant was notified of the threat to Jones in advance of the attacks. As an initial matter, Jones's allegations in the Consolidated Complaint are sufficient to meet the threshold inquiry at screening to state a claim for failure to protect.

## V.   <u>AMENDMENT UNDER THE PLRA</u>

The Sixth Circuit has held that a District Court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other

circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded").   Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend the Consolidated Complaint under the conditions set forth below.

## VI.    **CONCLUSION**

(1)    Based on Plaintiff's failure to state a claim on which relief can be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2), the Court **DISMISSES WITH PREJUDICE** Jones's official capacity claims against Defendants for damages and **DISMISSES WITHOUT PREJUDICE** Jones's official capacity claims against Defendants for injunctive and declaratory relief.

(2)    Defendant John Doe is **DISMISSED WITHOUT PREJUDICE**.  The Clerk is **DIRECTED** to terminate the reference to the "John Doe" defendant on the docket.

(3)     Leave to amend is **GRANTED** for Jones's official capacity claims dismissed without prejudice and to identify and allege claims against the unnamed Commissioner of the Department of Correction.  Any amendment must be filed within twenty-one (21) days after the date of this order.  Plaintiff is advised that an amended complaint will supersede the Consolidated Complaint and must be complete in itself without reference to the prior pleadings.  The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the Consolidated Complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.

IT IS SO ORDERED this 18th day of July, 2024.

*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE