IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**DEWAYNE JONES,**

    **Plaintiff,**

**v.**

**JOHN DOE, ET AL.,**

    **Defendants.**

**No. 1:23-cv-01200-SHM-tmp**

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dewayne Jones, an inmate at the Northwest Correctional Complex ("NWCX"), brought this action under 42 U.S.C. § 1983, alleging that NWCX prison officials violated his Eighth Amendment rights. (ECF No. 1.) He named the following Defendants: (1) John Doe, Commissioner of the Tennessee Department of Correction ("TDOC"); (2) Brandon Watwood, Warden of NWCX; (3) Jon Walton, Assistant Warden of Security; (4) Anna Parson, Assistant Warden of Treatment; (5) Baggett, Unit Manager; (6) Ward, Unit Sergeant; (7) P. Scott, "C.O.O."; and (8) Tiffany Garr, Security Threat Investigator. (Id.)

Before the Court is the Motion for Summary Judgment ("Motion") filed by the remaining Defendants Garr, Watwood, Walton, and Parson on November 18, 2024. (ECF No. 17.) Plaintiff has not responded. For the reasons that follow, the Motion is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff has been incarcerated at NWCX since September 2015. Around July 27, 2023, inmates identified as "Spider Los," "Big D," "M.D.," and "Detroit" – alleged members of the "CRIPS" gang – began extorting Plaintiff because of his convictions for child rape and aggravated sexual battery. (ECF No. 1.) The inmates demanded weekly payments of $40 and threatened to "beat [Plaintiff] to death" if he failed to comply. (Id.)

Since then, Plaintiff has sought protection from various NWCX prison officials. On August 2, 2023, he reported the extortion and threat to Defendant Garr, who told Plaintiff he would be moved to a different cell. (Id.) On August 4, 2023, Plaintiff relayed the same concerns to Defendant Walton, who similarly acknowledged the threats and said Plaintiff would be relocated. (Id.) On August 10, 2023, Plaintiff informed Defendant Parson, who assured Plaintiff that someone would follow up and arrange a move. (Id.) Plaintiff followed up with Parson on August 14, 2023, emphasizing the urgency. (Id.) On August 22, 2023, Plaintiff raised the issue with Defendant Watwood, saying that he had been asking help for five weeks, but no action had been taken to protect him. (Id.)

2

On September 8, 2023, Plaintiff was attacked outside his cell unit by "Detroit," one of the previously identified gang members. "Detroit" threatened Plaintiff to "get the money to the area or go to the med." (Id.) When Plaintiff refused to pay, "Detroit" assaulted him and brandished a knife. (Id.) After the incident, Plaintiff alleges that he received ongoing death threats and was unable to leave his cell or access the kitchen to eat. (Id.) He claims he submitted a formal grievance requesting protective custody later in September 2023, which Defendants deny ever receiving. (Id.)

On September 20, 2023, Plaintiff filed this suit. He claims that Defendants failed to protect him from known threats of inmate violence, thereby subjecting him to "cruel and unusual punishment" in violation of the Eighth Amendment. (Id.) He seeks: (1) a declaratory judgment that Defendants violated his constitutional rights; (2) injunctive relief compelling Defendants to assign him to a safer cell unit; (3) nominal compensatory damages of $1.00; and (4) any other relief the Court deems proper. (Id.)

B.   **Procedural Background**

On October 12, 2023, Plaintiff filed a motion for leave to proceed in forma pauperis. (ECF No. 5.) The Court granted the motion on October 16, 2023. (ECF No. 6.) On May 29, 2024, Plaintiff filed a motion to appoint counsel. (ECF No. 9.) On

3

July 17, 2024, the Court denied that motion, dismissed with prejudice Plaintiff's official-capacity claims for damages as barred by Eleventh Amendment sovereign immunity, and dismissed without prejudice Plaintiff's claims for injunctive and declaratory relief. (ECF No. 10.)

On November 18, 2024, Defendants filed the instant Motion for Summary Judgment (ECF No. 17), with a Statement of Undisputed Material Facts. (ECF No. 18.) In the Motion, Defendants argue that Plaintiff is not entitled to relief because he failed to exhaust his administrative remedies before filing suit in federal court. (ECF No. 19.) Defendants also assert that Plaintiff's claims are moot because he has been moved to a safer housing assignment and faces no ongoing threat of harm. (Id.)

According to Defendants' facts, Plaintiff was initially transferred from Unit 11 to Unit 10, a segregation housing unit, immediately on his request for protective custody. (ECF No. 18, at ¶ 23.) Following an investigation into Plaintiff's complaints, he was relocated to Unit 9, a protective custody unit. (Id. at ¶ 26.) On September 9, 2024, Plaintiff was moved again to Site 2, a separate minimum-security compound within NWCX, where he is currently incarcerated. (Id. at ¶ 28.) Defendants' facts show that Plaintiff has not reported further threats or safety concerns. (Id. at ¶¶ 29-31.)

Plaintiff has not filed a response.  The matter is now fully briefed and ripe for adjudication.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); La Pointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993).  A fact is "material" if "proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties."  Westfield Ins. Co. v. Enterprise 522, LLC, 34 F.Supp.3d 737, 743 (E.D. Mich. 2014) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)).  There is a "genuine dispute of material fact" if a reasonable jury could return a verdict for the non-movant by a preponderance of the evidence.  See Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

In evaluating a motion for summary judgment, a court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor.  See U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 327 (6th Cir. 2013).  The central inquiry is "whether

5

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson, 477 U.S. at 251-52) (internal quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment. Anderson, 477 U.S. at 252. Evidence that is "merely colorable" or "not significantly probative" likewise fails to create demonstrate a genuine dispute of material fact. Id. at 249-50.

The movant bears the initial burden of showing the absence of a genuine dispute of material fact. See Malkamaki v. Sea Ray Boats, Inc., 411 F.Supp.2d 737, 742 (N.D. Ohio 2005); see also Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56) ("[A] party seeking summary judgment always bears the initial responsibility of … identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."). Once the movant satisfies its burden, the burden shifts to the non-movant to identify specific facts demonstrating that a genuine dispute of material fact remains for trial. See Fed. R. Civ. P. 56(e); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995).

"[F]ailure to properly respond to a moving party's statement of material facts results in those facts being deemed admitted for the purpose of summary judgment." Myrtil v. Chevrolet, No. 2:22-cv-02595, 2025 WL 569627, at *4 (W.D. Tenn. Feb. 20, 2025) (citing Akines v. Shelby Cnty. Gov't, 512 F.Supp.2d 1138, 1147-48 (W.D. Tenn. 2007); see also Valentine v. PHH Mortgage Corp., No. 2:24-cv-02269, 2025 WL 1186901, at *2 (W.D. Tenn. Apr. 23, 2025) (citing Local Rule 56.1(d)); Panzica v. Corr. Corp. of Am., No. 12-1026, 2013 WL 3354517, at *2 (W.D. Tenn. Jul. 3, 2013) (same).

**III. ANALYSIS**

Under 42 U.S.C. § 1983, any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"  42 U.S.C. § 1983.

To establish claim under § 1983, a plaintiff must demonstrate:

(1)   the deprivation of a right secured by the "Constitution and laws of the United States," and

(2)   that the deprivation was committed by a person "acting under the color of state law."

7

Crowder v. Boyce, No. 2:14-cv-2962-JDT-tmp, 2015 WL 4546512, at *3 (W.D. Tenn. Jul. 28, 2015) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).

"Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001). It creates a "species of tort liability" for the violation of rights secured by the Constitution. Manuel v. City of Joliet, Illinois, 580 U.S. 357, 362 (2017). "Like a tort plaintiff," a § 1983 plaintiff must establish "both causation in fact and proximate causation." Marvaso v. Sanchez, 971 F.3d 599, 606 (6th Cir. 2020) (citing Lamont v. New Jersey, 637 F.3d 177, 185 (3d Cir. 2011)). Section 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." Imbler v. Pachtman, 424 U.S. 409, 418 (1976).

A prisoner may assert a § 1983 claim to seek redress for violations of the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. That language imposes on prison officials a duty to "provide humane conditions of confinement," to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] make reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 833 (1994); see also Bishop v.

8

Hackel, 636 F.3d 757, 766 (6th Cir. 2011). To establish a failure-to-protect claim under § 1983, a prisoner must sufficiently demonstrate: (1) an objectively "serious risk to inmate health or safety"; and (2) a subjectively "culpable state of mind" on part of the prison officials – namely, "deliberate indifference to the health or safety of the inmate." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Here, Defendants do not challenge the merits of Plaintiff's Eighth Amendment failure-to-protect claim. Instead, they argue that Plaintiff's claim fails on procedural grounds: (1) Plaintiff did not exhaust his administrative remedies before filing suit; and (2) Plaintiff's claims are moot because he has been moved to a safer housing assignment, thereby eliminating any active "case or controversy."

    **A.  Exhaustion of Administrative Remedies**

Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), to "reduce the quantity and improve the quality of prisoner suits" and to limit unnecessary federal court involvement in prison administration. Lamb v. Kendrick, 52 F.4th 286, 292 (6th Cir. 2022) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). To achieve those objectives, the PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner … until such

9

administrative remedies … available are exhausted." 42 U.S.C. § 1997e(a).

The exhaustion requirement affords "prison officials a fair opportunity" to resolve grievances internally, correct institutional errors, and "create an administrative record for [any claims] that eventually end up in court." Reed-Bey v. Pramstaller, 603 F.3d 322, 324 (6th Cir. 2010). To satisfy that requirement, "inmates must attempt to resolve their complaints through the jail's internal grievance policy." Pierce v. Rowland, No. 20-5731, 2021 WL 3929549, at *1 (6th Cir. Sept. 2, 2021). That includes "complying with the grievance policy's filing deadlines and other procedural rules." Id. Exhaustion is required even if the prisoner believes the grievance procedure is unavailable, ineffective, or futile. See Brock v. Kenton Cnty., 93 Fed. Appx. 793, 798 (6th Cir. 2004); see also Pack v. Martin, 174 Fed. Appx. 256, 262 (6th Cir. 2006).

"Failure to exhaust administrative remedies is an affirmative defense that must be raised and proved by a defendant." Taylor v. Purdom, 673 F.Supp.3d 872, 876 (E.D. Mich. 2023) (citing Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015)). However, once that defense is raised, a prisoner "must offer competent and specific evidence showing that he indeed exhausted [available] remedies, or was otherwise excused from doing so." Parks v. Mich. Dept. of

10

Corr., No. 2:20-CV-11673, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021). Summary judgment is proper where the defendant shows, by a preponderance of the evidence, that the inmate failed to comply with the grievance procedure before seeking remedies in federal court. See Napier v. Laurel Cnty., Ky., 636 F.3d 218, 226 (6th Cir. 2011). Importantly, "[s]ummary judgment based on failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice." Taylor, 673 F.Supp.3d at 876 (citing Adams v. Smith, 166 Fed. Appx. 201, 204 (6th Cir. 2006)).

**B.   Plaintiff Failed to Exhaust His Administrative Remedies**

Plaintiff alleges that he exhausted his administrative remedies by reporting the extortion and threats to Defendants on multiple occasions and by submitting a formal grievance. (ECF No. 1.) Defendants respond that those efforts do not qualify as "proper exhaustion" under the PLRA because Plaintiff failed to complete the multi-step grievance process required by the TDOC's grievance policy. (ECF No. 19.) Defendants' undisputed facts show that the only formal grievance they received from Plaintiff was submitted on November 28, 2023, more than two months after Plaintiff had filed suit on September 20, 2023. (ECF No. 18, at ¶ 23.)

Plaintiff has not properly exhausted his administrative remedies. Under the PLRA, proper exhaustion requires prisoners to "complete the administrative review process in accordance with the applicable procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 88 (2006). Those rules "are not defined by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). The "grievance procedures will vary from system to system and claim to claim," and "it is the prison's requirements … that define the boundaries of proper exhaustion." Id.

The TDOC's grievance procedure is set forth in Policy 501.01 and further explained by the TDOC Inmate Grievance Procedures Handbook. (ECF No. 18, at ¶ 15.) Under that policy, proper exhaustion requires completion of a three-tiered internal review process. (Id.) First, a prisoner must submit a written grievance within seven calendar days of the incident. (Id.) The grievance committee reviews the submission and issues a written response. (Id.) Second, if the prisoner is dissatisfied with the committee's response, he may appeal to the warden. (Id.) The grievance committee then issues a proposed response, which is forwarded to the warden for review. (Id.) The warden may adopt, modify, or reject the committee's recommendation. (Id.) Third, if still dissatisfied, the prisoner may file a final appeal to the TDOC Assistant Commissioner, who must respond within 25 working days.

12

(Id.)  Only after completing all three levels of review may the prisoner seek judicial relief.  (Id.)

Here, Plaintiff has not complied with the TDOC's grievance procedure.  Defendants have detailed Plaintiff's failure in their Statement of Undisputed Material Facts, to which Plaintiff has not responded.  (Id. at ¶¶ 17-22.)  Those facts are deemed admitted for purposes of summary judgment.  See Myrtil, 2025 WL 569627, at *4.  The records show that Plaintiff completed, at most, only the first level of review.  (Id. at ¶ 17.)  Plaintiff has not responded with a specific date on which he submitted a grievance and has not provided evidence that he waited for a response from prison officials before filing suit in federal court.  (Id.)  He did not pursue the two subsequent levels of review – that is, the appeal to the warden and the final appeal to the Assistant Commissioner.  (Id.)

Plaintiff alleges that he submitted a grievance in late September 2023.  (ECF No. 1.)  According to Defendants' Statement of Undisputed Material Facts, they did not receive a grievance until November 28, 2023, well after Plaintiff filed suit.  (ECF No. 18, at ¶ 23.)  Plaintiff has not responded.  At summary judgment, Plaintiff cannot rely only on the allegations in his complaint. Defendants' facts are admitted.  Even if Plaintiff had submitted a grievance in September 2023, he would not have

13

exhausted his administrative remedies. See Hughes v. Tennessee Dept. of Corr., No. 3:19-cv-00924, 2022 WL 601811, at *9 (M.D. Tenn. Jan. 28, 2022) ("[T]he filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a)."). The PLRA "requires a prisoner to pursue his prison grievance through the final level of administrative appeal." Id. (citing Hartsfield v. Vidor, 199 F.3d 305, 306 (6th Cir. 1999)). A prisoner may not "abandon the process before the completion [of his grievance] and claim that he has exhausted his remedies." Id. The only way Plaintiff could properly exhaust his administrative remedies would be to complete the three-tiered process prescribed by TDOC policy. He has not done so. Plaintiff has failed to satisfy the PLRA's exhaustion requirement.

**IV. CONCLUSION**

Failure to exhaust administrative remedies under the PLRA is a complete bar to relief under 42 U.S.C. § 1983. Because Plaintiff has failed to properly exhaust the grievance process in accordance with the TDOC policy, there is no genuine issue of material fact for trial. Summary judgment is warranted.

The Court finds that Plaintiff's claims are procedurally barred for failure to exhaust. It need not reach Defendant's alternative argument addressing mootness.

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**.  Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED** this _29th_ day of August, 2025.


      /s/ *Samuel H. Mays, Jr.*
      SAMUEL H. MAYS, JR.
      UNITED STATES DISTRICT JUDGE